UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIK PRIME, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC., KEVIN R. SAYER, JACOB S. LEACH, and JEREME M. SYLVAIN,<br><br>Defendants. | Case No. 1:25-cv-08912-KPF |
| OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM and OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC., KEVIN R. SAYER, JACOB S. LEACH, JEREME M. SYLVAIN, and SEAN CHRISTENSEN,<br><br>Defendants. | Case No. 1:25-cv-09370-KPF<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
STATE TEACHERS RETIREMENT SYSTEM OF OHIO
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF SELECTION OF CO-LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | SUMMARY OF THE FACTUAL ALLEGATIONS | | 3 |
| III. | ARGUMENT | | 5 |
| | A. | The Actions Should Be Consolidated | 5 |
| | B. | Ohio STRS Should Be Appointed Lead Plaintiff | 6 |
| | | 1. Ohio STRS Timely Moved For Appointment as Lead Plaintiff | 7 |
| | | 2. Ohio STRS Has the Largest Financial Interest in the Relief Sought by the Class | 7 |
| | | 3. Ohio STRS Otherwise Satisfies the Requirements of Rule 23 | 8 |
| | |    a. Ohio STRS's Claims are Typical of the Claims of the Class | 8 |
| | |    b. Ohio STRS Will Fairly and Adequately Represent the Interests of the Class | 9 |
| | C. | The Court Should Approve Ohio STRS's Selection Of Co-Lead Counsel | 10 |
| IV. | CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Canson v. WebMD Health Corp.*,
   No. 11-cv-5382 (JFK), 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011) ........................................8

*Hom v. Vale, S.A.*,
   No. 15-CV-9539, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..................................................1

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. MDL 1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003)....................................................7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..................................................................................................11

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006).......................................................................................1

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992).....................................................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).......................................................................................................9

*In re Gen. Electric Sec. Litig.*,
   No. 09 Civ. 1951, 2009 WL 2259502 (S.D.N.Y. July 29, 2009) .............................................5

*Janbay v. Can. Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ..............................................................................................9

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...................................................................................................5

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................5

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)................................................7, 8

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)....................................8

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .................................................................................8, 9

**Statutes**

15 U.S.C. § 78t(a) .............................................................................................................2

15 U.S.C. § 78u-4(a)(1) ....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A) ...........................................................................................6, 7

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................................... *passim*

Securities Exchange Act of 1934 ........................................................................1, 2, 5, 6

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

**Court Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................ *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730
    (1995) ...........................................................................................................................9

**Regulations**

17 C.F.R. § 240 10b-5 .......................................................................................................2

Class member State Teachers Retirement System of Ohio ("Ohio STRS" or "Movant") respectfully submits this memorandum in support of its motion (1) to consolidate the above-captioned related actions; (2) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) for approval of Movant's selection of the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") and Murray Murphy Moul + Basil LLP ("Murray Murphy") as Co-Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

I.     **INTRODUCTION**

Presently pending in this District are two related securities class actions[1] (the "Actions") brought on behalf of all persons who purchased or otherwise acquired the securities of DexCom, Inc. ("DexCom" or the "Company") during the relevant period.[2] The Actions are brought against DexCom, Kevin R. Sayer, DexCom's Chief Executive Officer and Chairman of the Board of Directors until September 14, 2025, and President until May 9, 2025; Jacob S. Leach,

---

[1] In addition to the above-captioned actions pending in this District, there is one related action pending in the Southern District of California against the same defendants alleging the same claims, namely, *Boston Retirement System v. DexCom, Inc., et al.*, No. 3:25-cv-3284-WQH-KSC (S.D. Cal.) (the "California Action"). Contemporaneous with this filing, Movant is also filing a motion for appointment as lead plaintiff and approval of selection of co-lead counsel in the California Action, which ultimately should be consolidated with the above-captioned actions.

[2] The first-filed action, *Erik Prime v. DexCom, Inc., et al.*, No. 1:25-cv-08912, alleges a class period of July 26, 2024 through September 17, 2025, inclusive. The second action, *Oakland County Employees' Retirement System, et al. v. DexCom, Inc., et al.*, No. 1:25-cv-09370, alleges a class period of January 8, 2024 through September 17, 2025, inclusive. In determining the lead plaintiff movant with the "largest financial interest" under the PSLRA, courts in this District have applied the longest, most inclusive class period alleged in related cases. *See, e.g.*, *Hom v. Vale, S.A.*, No. 15-CV-9539, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006). Here, the longest alleged class period is January 8, 2024 through September 17, 2025, inclusive (the "Class Period").

Chief Operating Officer, President since May 9, 2025, and Interim Principal Executive Officer of DexCom since September 14, 2025; Jereme M. Sylvain, DexCom's Chief Financial Officer; and Sean Christensen, DexCom's Vice President of Finance and Investor Relations (collectively "Defendants").[3]  The Actions allege Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240 10b-5.

Pursuant to the PSLRA, the Court shall decide whether to consolidate the related Actions prior to selecting a Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Here, as discussed below, the Actions should be consolidated because they each allege substantially the same wrongdoing against the same Defendants and assert the same claims of relief.

The PSLRA further provides that, as soon as practicable after consolidation, the Court must appoint as Lead Plaintiff the movant that has demonstrated the "largest financial interest in the relief sought by the class" and that also meets the typicality and adequacy requirements under Rule 23 of the Federal Rules of Civil Procedure.  *See* § 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Ohio STRS is the most adequate plaintiff because: (1) it suffered losses of $22,534,381.51 on its transactions in DexCom securities during the Class Period and, to the best of its knowledge, has the largest financial interest in the relief sought by the Class; and (2) Ohio STRS satisfies the typicality and adequacy requirements of Rule 23 (a)(3) and (a)(4).  Accordingly, the Court should appoint Ohio STRS as Lead Plaintiff.

The Court should also approve Ohio STRS's selection of Lieff Cabraser and Murray Murphy as Co-Lead Counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Lieff Cabraser and Murray Murphy each have decades of experience representing investors in securities class actions and

---

[3] The second-filed action includes Sean Christensen together with all defendants named in the first-filed action.

other securities and financial fraud litigation and have a successful track record of working together in other complex financial fraud class litigation. For the reasons set forth below, Movant's motion should be approved in its entirety.

II.     **SUMMARY OF THE FACTUAL ALLEGATIONS**

DexCom, incorporated in Delaware and headquartered in San Diego, California, designs, manufactures, and markets continuous glucose monitoring (CGM) systems to help individuals with types 1 and 2 diabetes monitor and control their blood sugar levels. The Company's two key CGM products are called G6 and the G7, which DexCom launched in 2018 and in 2023, respectively.

The Actions allege that, throughout the Class Period, Defendants made false or misleading statements and failed to disclose that: (a) DexCom made material design changes to the G6 and G7 without U.S. Food and Drug Administration ("FDA") approval that adulterated a sensor component and compromised the accuracy of its blood glucose reading; (b) the G7 device had significant issues with app connectivity, causing inaccurate readings and delayed alerts; and (c) as a result of these issues, the G7 exposed unsuspecting patients to significant risk of injury or death.

On July 25, 2024, after market close, DexCom announced disappointing Q2 2024 fiscal results that missed analysts' revenue expectations, and lowered its full year revenue guidance, from $4.2 billion – $4.35 billion to $4.00 billion – $4.05 billion. The Company cited increased rebate claims and sales team reorganization as an explanation for its underperformance. On this news, the price of DexCom common stock declined $43.85 per share, or 40.66%, from a closing price of $107.85 per share on July 25, 2024, to close at $64.00 per share on July 26, 2024, on extremely heavy trading volume. A former DexCom software engineer who worked on the G7 "quality team" during the Class Period has alleged that the Company's Q2 2024 disappointing

- 3 -

quarterly performance and reduced 2024 revenue guidance were actually due to rampant signal loss and data reception issues within the G7, which led to many complaints and a refusal from consumers to upgrade to the G7 from the G6.

On March 7, 2025, after market close, DexCom revealed that it had received a Warning Letter from the FDA on March 4, 2025 "following inspections of DexCom's facilities in San Diego, California and Mesa, Arizona." According to the Company, the FDA inspectors "observed non-conformities in manufacturing processes and quality management system" but DexCom assured investors that it would "not restrict the Company's ability to produce, market, manufacture or distribute products, require recall of any products, nor restrict the Company's ability to seek FDA 510(k) clearance of new products." On this news, the price of DexCom common stock declined $7.12 per share, or 9.15%, from a closing price of $77.84 per share on March 7, 2025, to close at $70.72 per share on March 10, 2025, on heavy trading volume.

On March 25, 2025, the FDA published the Warning Letter that revealed that DexCom had "adulterated" its G6 and G7 products because DexCom replaced a "component used in the resistance layer" with a less accurate component without regulatory approval. The letter warned this change resulted in "larger inaccuracies" than the prior material in measuring blood glucose, which could pose significant consumer health risks. On this news, the price of DexCom common stock declined $3.19 per share, or 4.24%, over the next two trading days, from a closing price of $75.32 per share on March 24, 2025, to close at $72.13 per share on March 26, 2025.

On September 8, 2025, equity research firm Oppenheimer downgraded its rating of DexCom to "perform" from "outperform" and removed its $102.00 price target on DexCom's stock, citing patient and consumer concern with the G7's inaccuracy, failed sensor insertions, abrupt stoppages, and other performance issues due to the G7's quality and performance issues.

On this news, the price of DexCom common stock fell $2.51 per share, or 3.12%, from a closing price of $80.51 per share on September 5, 2025, to close at $78.00 per share on September 8, 2025, on elevated trading volume.

On September 18, 2025, Hunterbrook, a publisher of investigative and global reporting, published a report based on witness accounts and records it obtained from the FDA through Freedom of Information Act requests showing many injuries—and several deaths—caused by the adulterated G6 and G7 devices, far more than DexCom had previously disclosed. On this news, the price of DexCom common stock fell $8.99 per share, or 11.76%, over the next two trading days, from a closing price of $76.44 per share on September 17, 2025, to close at $67.45 per share on September 19, 2025, on extremely heavy trading volume.

### III. ARGUMENT

#### A. The Actions Should Be Consolidated

The PSLRA requires that prior to the appointment of Lead Plaintiff, a court should consolidate securities class actions brought "on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4 (a)(3)(B)(ii). When a court is presented with securities actions based on the same "public statements and reports, consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). In addition, "[c]onsolidation promotes judicial convenience and avoids unnecessary costs to the parties." *In re Gen. Electric Sec. Litig.*, No. 09 Civ. 1951, 2009 WL 2259502, at *2 (S.D.N.Y. July 29, 2009) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)).

These Actions involve substantially similar operative facts, allege overlapping class periods, and assert the same claims under the Exchange Act against the same Defendants. In the

- 5 -

interests of judicial efficiency and economy, the Actions should be consolidated for all purposes.

### B. Ohio STRS Should Be Appointed Lead Plaintiff

The PSLRA sets forth a procedure that governs the appointment of a lead plaintiff in a private action arising under the Exchange Act brought as a class action pursuant to the Federal Rules. 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

*Second*, the PSLRA provides that within 90 days after publication of the notice, the court shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 1. Ohio STRS Timely Moved For Appointment as Lead Plaintiff

In this case, the plaintiff in the first-filed action published a notice on *ACCESS Newswire* on October 27, 2025. A copy of the notice is attached as Exhibit A to the Declaration of Daniel P. Chiplock ("Chiplock Decl."), submitted herewith. The notice advised that all class members who are interested in moving for appointment as Lead Plaintiff in this matter must do so by December 26, 2025. Courts have recognized national news wire services as suitable vehicles for meeting the PSLRA's requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2003 WL 102806, at *1-2 (S.D.N.Y. Jan. 10, 2003). Ohio STRS's motion, filed on December 26, 2025, is therefore timely. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

### 2. Ohio STRS Has the Largest Financial Interest in the Relief Sought by the Class

As noted above, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the "person" or "group of persons" who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). While the Second Circuit has not definitively ruled on the proper method for determining which movant has the largest "financial interest," courts in this Circuit have applied a four-factor test, as first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

Ohio STRS should be appointed Lead Plaintiff because it believes that, at the time of filing, it has the largest financial interest of any of the Lead Plaintiff movants based on the *Lax* test. *Lax*, 1997 WL 461036, at *5 (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class

period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y.2004) (applying four-factor "*Lax* test" in determining the party with the largest financial interest); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018) (same). Specifically, during the Class Period, Ohio STRS (1) purchased a total of 474,346 shares of DexCom common stock; (2) purchased a net amount of 11,546 shares of DexCom common stock; (3) expended a net amount of $22,400,628.11 on its purchases of DexCom stock; and (4) suffered a loss of $22,534,381.51 on a Last-In-First-Out basis as a result of the disclosure of the fraud. *See* Chiplock Decl., Exs. B and C (attaching Ohio STRS's certification and chart analyzing its loss). Ohio STRS believes it possesses the largest financial interest in the outcome of this litigation and, therefore, presumptively is the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Ohio STRS Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Ohio STRS also satisfies the requirements of Rule 23. On a motion to serve as lead plaintiff, the movant need only make a preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23. *See Micholle*, 2018 WL 1307285, at *6; *Canson v. WebMD Health Corp.*, No. 11-cv-5382 (JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). Ohio STRS clearly satisfies both requirements.

#### a. Ohio STRS's Claims are Typical of the Claims of the Class

Ohio STRS's claims are typical of the claims of other members of the class. Typicality is established "where 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Canson*, 2011 WL 5331712, at *4 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d

Cir. 1992)).  The claims of the class representative, however, need not be identical to those of all members of the class to satisfy the typicality requirement.  *Janbay v. Can. Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010).

Ohio STRS satisfies the typicality requirement because, just like all other class members, it: (1) transacted in DexCom securities during the Class Period; (2) purchased or otherwise acquired DexCom securities at prices that were artificially inflated by Defendants' wrongful conduct; and (3) suffered damages thereby.  Ohio STRS's claims are typical of those of other class members since Ohio STRS's claims and the claims of other class members arise out of the same course of events and are based on the same legal theories.  *Id.* at 121.

        **b.**        **Ohio STRS Will Fairly and Adequately Represent the Interests of the Class**

Ohio STRS likewise satisfies the adequacy requirement of Rule 23.  In assessing adequacy, courts consider whether (1) the plaintiff has interests in common with, and not antagonistic to, the interests of the class and not collusive with other litigants; and (2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Pirelli*, 229 F.R.D. at 413.

Ohio STRS has made a sufficient showing that it is adequate under Rule 23.  Ohio STRS, which is responsible for overseeing approximately $96.2 billion in investments on behalf of approximately 543,000 active and retired Ohio public school teachers and administrators and higher education faculty, is precisely the type of large and sophisticated institutional investor that Congress encouraged to serve as Lead Plaintiff in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will

ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Ohio STRS has significant experience serving as Lead Plaintiff in securities class actions, including serving as Co-Lead Plaintiff in *In re Bank of America Corp. Securities Litigation*, No. 1:09-md-02058 (S.D.N.Y.) (recovering $2.425 billion for the class and achieving certain corporate governance reforms at Bank of America Corporation), and as Co-Lead Plaintiff in *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-02004 (C.D. Cal.) (achieving $250 million class recovery). Ohio STRS and its counsel believe that their interests do not conflict with the interests of other class members. In fact, the interests of Ohio STRS and other class members are aligned because each class member purchased or otherwise acquired DexCom securities in reliance on the misrepresentations or omissions described above. In addition, there is no evidence that the action is collusive.

Moreover, Ohio STRS has demonstrated its adequacy through its selection of Lieff Cabraser and Murray Murphy as Co-Lead Counsel to represent the Class. As discussed more fully below, Lieff Cabraser and Murray Murphy are both qualified and experienced in the area of securities and financial fraud litigation and have demonstrated an ability to conduct complex securities class action litigation effectively.

Accordingly, Movant has made the requisite showing that it satisfies the typicality and adequacy requirements of Rule 23. The Court should therefore appoint Movant as Lead Plaintiff.

### C. The Court Should Approve Ohio STRS's Selection Of Co-Lead Counsel

The PSLRA directs that once a court designates a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The lead plaintiff's selection of lead counsel, however, shall not be disturbed unless it is necessary to protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa);

*In re Cavanaugh*, 306 F.3d 726, at 732, n.11 (9th Cir. 2002) ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

The Court should approve Ohio STRS's choice of the law firms of Lieff Cabraser and Murray Murphy to serve as Co-Lead Counsel. Lieff Cabraser is one of the nation's largest plaintiffs' law firms, with 137 attorneys in offices nationwide and internationally and experience prosecuting scores of securities and financial fraud lawsuits on behalf of public and private institutional investors and other investors. *See* Chiplock Decl. Ex. D (Lieff Cabraser Firm Resume). Lieff Cabraser has served as class counsel in securities fraud class actions that resolved favorably for investors, including in *In re BofI Holding Inc. Securities Litigation*, No. 15-cv-2324 (S.D. Cal.), and *In re A-Power Energy Generation Systems, Ltd. Securities Litigation*, No. 2:11-ml-2302-GW (CWx) (C.D. Cal.). Lieff Cabraser is also currently serving as co-lead counsel for lead plaintiffs the New York City Pension Funds in securities fraud class action litigation, *Gonsalves v. Block, Inc.*, *et al*. No. 5:25-cv-00642-NW (N.D. Cal.), and *KBC Asset Management NV, et al. v. Discover Financial Services, et al.*, No. 1:23-cv-06788 (N.D. Ill.). Lieff Cabraser has extensive experience serving as lead or co-lead counsel in other securities and financial fraud litigation matters, including *In re Wells Fargo & Co. Shareholder Derivative Litigation*, No. 3:16-cv-05541 (N.D. Cal.), which resolved in a $240 million settlement; *In re The Boeing Co. Derivative Litigation*, C.A. No. 2019-0907-MTZ (Del. Ch.), which resolved for $237.5 million and expansive corporate governance reforms relating to airplane safety oversight; and *In re Broadcom Corp. Derivative Litigation*, No. C-06-3252 R (CWx) (C.D. Cal.), in which Lieff Cabraser achieved settlements totaling $197 million, one of the largest settlements in a derivative action involving stock options backdating.

Further, Lieff Cabraser is one of few plaintiffs' firms with experience trying federal

securities class cases. For example, in *Claghorn v. Edsaco*, No. 98-3039-SI (N.D. Cal.), Lieff Cabraser, serving as lead counsel, obtained a $170.7 million jury verdict after a multi-week trial. In *FPI/Agretech Securities Litigation*, MDL No. 763 (D. Haw.), Lieff Cabraser recovered tens of millions of dollars in class settlements and a $25 million jury verdict at trial against a non-settling defendant.

     Murray Murphy is a distinguished Plaintiffs' law firm based in Columbus, Ohio, with over 25 years of experience in securities litigation and complex class action and multi-party litigation. *See* Chiplock Decl. Ex. E (Murray Murphy Firm Resume). Murray Murphy has been a member of the Ohio Attorney General's Securities Litigation Panel for more than 15 years. Murray Murphy has extensive experience in securities litigation involving public and private institutional investors. The firm has participated in many securities matters that have achieved outstanding results for investors, including *In re Cardinal Health Securities Litigation*, No. 2:04-cv-00575 (S.D. Ohio), which resulted in a $600 million settlement and is the largest securities class action settlement in the history of the Sixth Circuit. Murray Murphy is currently serving as counsel in the *In re FirstEnergy Corp. Securities Litigation*, No. 2:20-cv-3785 (S.D. Ohio), a matter involving the largest public corruption case in Ohio's history. The firm has had repeated success as counsel for Ohio's pension funds in numerous securities cases, including *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-02004 (C.D. Cal.), achieving a $250 million settlement just weeks before the matter was set to go to trial. Other matters in which Murray Murphy worked with Ohio to secure notable results include *In re Marsh & McLennan Cos., Inc. Securities Litigation*, No. 1:04-cv-08144 (S.D.N.Y.), which resolved for $400 million, and *Schenk v. Mallinckrodt, PLC, et al.*, 1:17-cv-00145 (D.D.C.) in which a $65,750,000 recovery was able to be obtained despite the filing of bankruptcy by the Defendant.

Lieff Cabraser and Murray Murphy have a successful track record working together as co-counsel on complex financial fraud litigation matters, including in *In re Bank of N.Y. Mellon Corp. Foreign Exchange Transactions Litigation*, No. MD-12-2335-LAK (S.D.N.Y.), in which Lieff Cabraser, as a member of the Plaintiffs' Executive Committee and co-lead class counsel, and Murray Murphy, which served as Plaintiffs' Counsel, recovered $335 million in litigation against BNY Mellon and its predecessors and subsidiaries, alleging defendants deceptively overcharged custodial customers on foreign currency exchanges made necessary by the purchase or sale of foreign securities.

For these reasons, Lieff Cabraser and Murray Murphy are more than qualified to represent the Lead Plaintiff and the Class and, therefore, Movant's selection of Co-Lead Counsel should be approved.

## IV. CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Ohio STRS as Lead Plaintiff for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B); (3) approve Ohio STRS's selection of Lieff Cabraser and Murray Murphy as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (4) grant such other and further relief as the Court may deem just and proper.

Dated: December 26, 2025  
       New York, New York

Respectfully submitted,

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By: /s/ *Daniel P. Chiplock*  
Steven E. Fineman (SF-8481)  
Daniel P. Chiplock (DC-1137)  
Michael J. Miarmi (MM-1193)  
Sharon M. Lee (SL-5612)  
250 Hudson Street, 8th Floor  
New York, NY  10013-1413  
Telephone: (212) 355-9500  
Facsimile: (212) 355-9592

- 13 -

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Richard M. Heimann
Katherine Lubin Benson
Courtney J. Liss
275 Battery Street, 29th Floor
San Francisco, CA  94111
Tel.:  (415) 956-1000
Facsimile:  (415) 956-1008

**MURRAY MURPHY MOUL + BASIL LLP**
Brian K. Murphy
1114 Dublin Road
Columbus, OH 43215
Telephone:  (614) 488-0400
Facsimile: (614) 488-0401
Email: murphy@mmmb.com

*Counsel for Movant State Teachers Retirement System of Ohio and Proposed Co-Lead Counsel for the Class*

- 14 -

- 15 -

## CERTIFICATE PURSUANT TO LOCAL CIVIL RULE 7.1(c)

I, Daniel P. Chiplock, I am a partner with the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"), counsel for class member State Teachers Retirement System of Ohio. Pursuant to Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law In Support of the Motion of the State Teachers Retirement System of Ohio for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Co-Lead Counsel (the "Memorandum") complies with the word count limitations of Rule 7.1(c). The total relevant word count of the Memorandum is 3,803 words.

Dated:  December 26, 2025                           */s/ Daniel P. Chiplock*
        New York, New York                           Daniel P. Chiplock

3380230.1